## IDAHO POWER CO v. FEDERAL POWER COMMISSION.

### No. 10530.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 11, 1950.

Decided May 10, 1951.

A. C. Inman, of the Bar of the Supreme Court of Idaho, Boise, Idaho, pro hac vice, by special leave of Court, and Harry Poth, Jr., Washington, D. C., for petitioner.

Willard W. Gatchell, Asst. General Counsel, Federal Power Commission, Washington, D. C., with whom Bradford Ross, General Counsel, Federal Power Commission, and John C. Mason, Attorney, Federal Power Commission, Washington, D. C., were on the brief, for respondent.

Before WILBUR K. MILLER and PRETTYMAN, Circuit Judges, and KIMBROUGH STONE, Circuit Judge, retired (sitting by designation).

PRETTYMAN, Circuit Judge.

This is a petition to review an order of the Federal Power Commission, granting a license for the construction, operation and maintenance of a power project on federal lands. Petitioner (hereinafter called the "Company") is a private corporation, a public utility, and was the applicant for the license. Its prayer to this court is that the order of the Commission be modi-

fied by striking therefrom certain conditions imposed by the Commission upon the license.

In 1947 the Company applied for a license for the construction, operation and maintenance of a hydroelectric project, including a dam and a power plant, located on the Snake River in south-central Idaho, occupying in part lands of the United States. This application was pursuant to Section 4(e) of the Federal Power Act.[1] In 1948 the Commission authorized issuance of the license but reserved "the right to determine at a later date what transmission facilities should be included in the license as part of the project." In 1949 the Company applied for an amendment of its license to include as a part of the project two proposed high-voltage (138,000 volts) primary transmission lines. One such line was to run approximately 73 miles from the power plant to a point near the City of Boise. The other was to run approximately 116 miles from the plant to a point near the City of American Falls. Both lines crossed lands of the United States, and both joined the Company's interconnected primary transmission system. The Company applied for and was granted prelicense permission to proceed with the construction of the two lines, pending consideration of the application for amendment. In October, 1949, the Commission entered an order, which superseded its original order, authorizing the license. Among other things, this new order authorized the construction of the two 138-kilovolt lines as part of the project but imposed upon such construction and operation certain special conditions.

These special conditions are reproduced in full text in footnote 2 below,[2] but they may be summarized as follows:

The Company shall not convert the lines to permit operation at a higher voltage without prior approval of the Commission,

1. 41 Stat. 1065 (1920), as amended, 49 Stat. 840 (1935), 16 U.S.C.A. § 797(e).

2. "(F) The construction and operation of the transmission lines from the Bliss plant to substations near American Falls and Boise shall be subject to the following special conditions:

"(1) The licensee shall not convert said lines to permit operation at a higher voltage without prior approval of the Commission. Upon the request of the Secretary of the Interior under appropriate authority, the licensee shall, after notice of at least one year from the Commission and within the time fixed by the Commission, convert said lines for operation at a voltage of 230 kv at the expense of the United States.

"(2) After the initial construction of the lines or upon conversion of the lines to a higher voltage as herein provided, the licensee shall permit the United States, and the United States shall have the right, to interconnect any of its transmission facilities with said lines in a manner conforming to approved standards of practice for the interconnection of transmission circuits provided there is capacity available in said line or lines in excess of the needs of the licensee. The expense of such interconnection, including the expense of additional switching, relaying, and other protective devices, shall be borne by the United States, provided, however, that no

such interconnection may be made without the prior approval of the Commission.

"(3) Upon completion of any such interconnections, the United States shall have the right to transfer energy over said lines as initially or ultimately constructed in such amounts as will not unreasonably interfere with the licensee's use of said lines provided that the licensee shall be obligated to allow the transmission over the said lines by the United States of electric energy only to consuming facilities of the United States and to public bodies and cooperatives entitled to statutory preference in connection with the distribution and sale of electric energy by the United States.

"(4) After any such interconnection of the facilities of the United States with said lines the licensee shall, except in emergencies, maintain in a closed position all connections under the licensee's control between the licensee's lines and the interconnecting facilities provided by the United States.

"(5) Any interconnected power systems of the United States and the licensee shall be operated in parallel and in such manner as to render good and adequate service. Any inadvertent flow of energy from the lines of the United States into said lines or from said lines into the lines of the United States which may occur while the lines of both the li-

but, upon request of the Secretary of the Interior and after one year's notice from the Commission, the Company shall convert the lines for operation at 230 kilo- volts. The Company shall permit the United States to interconnect any of its (*i. e.*, the United States') transmission facilities with these two lines, provided there is ca-

censee and the United States are electrically interconnected shall mutually be compensated for by later return in kind. Any scheduled transfer of energy over said lines for the account of the United States shall be settled for, or any investment in said lines made by the United States shall be liquidated, on reasonable terms under agreements which shall be negotiated between the licensee and the United States, said agreements to be subject to approval by the Commission.

"(6) Until such agreements are completed, settlement for any such scheduled transfers of power shall be made on the following basis: If power and energy from the lines of the United States is transmitted over these lines, the monthly payment for such transmission shall be the amount of dollars representing that part of the monthly cost to the licensee of the section of the line or lines over which the power and energy is transmitted which the maximum transmission by the United States in kilowatts during the month bears to the kilowatt capacity of such section of line or lines. The monthly cost to the licensee referred to herein shall be computed in conformity with the uniform system of accounts prescribed by the Commission.

"(7) In the event the licensee, its successors or assigns, during any period in which the United States is transmitting power over these lines, shall require reciprocal accommodations for the transfer of power from these project lines over any lines of the United States connected to said lines of the licensee, such reciprocal accommodations shall be accorded to the licensee under like terms and conditions as herein provided for the transfer of power from the lines of the United States over said lines of the licensee.

"(8) If, at any time subsequent to the date upon which the licensee commences the transmission of energy over said lines for the United States, the licensee notifies the Commission that the licensee needs for the transmission of electric energy in connection with its operations the whole or any substantial part of the capacity of the said lines, or part thereof, then being utilized by the United States, and the licensee makes satisfactory provision for reimbursement to the United States of the original cost to the United States of the facilities desired by the licensee, less accrued depreciation on the investment of the United States, the licensee may modify or revoke the then existing agreement to remain interconnected and to transmit energy for the United States by giving to the Commission 30 months' notice, of the licensee's intention to utilize additional capacity or the entire capacity of the lines, or part thereof, as the case may be, provided, however, that the United States may continue to utilize any capacity in the said lines to the extent that said capacity, if any, was provided by the United States at its expense without reimbursement by the licensee.

"(9) If at any time in the future the said lines of the licensee are proposed for alteration or are altered, the Commission reserves the right, after 30 days' notice and opportunity for hearing, to make a determination as to whether the lines after such alteration, either proposed or actual, will be subject to licensing by the Federal Power Commission under the then existing laws and regulations, and in the event that the Commission finds that the said alteration in the lines, either proposed or actual, so changes the functions served by said lines and the source of energy transmitted over said lines as to make them, or any part of them, not subject to the licensing authority of the Commission under the then existing laws and regulations, the licensee hereby agrees to secure authority for the continued operation and maintenance of the lines, or such part of the lines, from the appropriate agency of the United States then having jurisdiction over the lands of the United States occupied by the lines, or part thereof, and upon securing said authority the licensee hereby agrees to surrender the license insofar as it authorizes operation and maintenance of the lines, or such parts thereof, which are found to be no longer subject to Commission jurisdiction. In the event that the licensee should fail to surrender the license insofar as it is applicable to the lines, or parts thereof, which may then be found by the Commission not to be subject to its jurisdiction, the Commission reserves the right to take appropriate action to have the license terminated with respect to said lines, or parts thereof, as provided in the then existing laws and regulations.

pacity available in the lines in excess of the needs of the Company. Upon completion of such interconnections the United States shall have the right to transfer energy over the lines in such amounts as will not unreasonably interfere with the Company's use of the lines. After any such interconnection the Company shall, except in emergencies, maintain in a closed position all connections between the Company's lines and the interconnecting facilities of the United States. If, after the Company commences transmission of energy over its lines for the United States, the Company notifies the Commission that it needs the whole or any substantial part of the capacity of the lines then being utilized by the United States, the Company may modify or revoke the agreement to remain interconnected by giving the Commission 30 months' notice. Any agreement between the Company and the United States in connection with the transmission lines shall be effective only upon approval by the Commission. In the event the Company and the United States are unable to agree with respect to any matter arising in connection with the transmission lines, the question thereby raised shall be submitted to the Commission for determination.

In sum, the Commission required, as conditions to the license, that the licensee agree to increase the capacity of its lines at Government request and thereafter to transmit Government power, the lines to remain interconnected unless and until thirty months' notice is given. The question presented by this petition for review is whether the Commission has authority to impose those conditions upon a license for the construction and operation of a power project upon federal lands under the terms of the Federal Power Act.

■ It is necessary that we first delimit the question. There is no doubt as to the power of Congress to impose such conditions as are proper in its judgment to be imposed upon the use of public lands. The Constitution[3] specifically provides: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *."

No question of contract is involved. No question is raised as to the character of the transmission lines as primary and thus as part of the power project within the meaning of the statute. No question is raised as to the financial terms incorporated in the proposed conditions; the terms of the license as proposed by the Commission include detailed provisions as to compensation to the Company by the United States for the expense of converting the lines and for transmitting energy of or for the United States.

■ As thus delimited the question before us is: Has Congress conferred upon the Commission authority to impose upon a license for a power project on public lands requirements that the licensee increase the proposed capacity of its primary transmission lines, interconnect those lines with power project of the United States, and transmit over its lines for the United States power generated by or belonging to the United States? We are of opinion that the Commission does not have the statutory authority which it here claims.

The question whether the United States should require a private company, licensed to construct a private power plant on public lands or to cross public lands with its transmission lines, to interconnect its facilities with public power projects, was a major one in the consideration of the policies and terms of power development upon public property. It was a highly controversial issue. During the course of the

"(10) Any agreement between the licensee and the United States in connection with said transmission lines or related facilities shall be effective only upon approval by the Commission. In the event the licensee and any agent of the United States are unable to agree with respect to any matter arising in connection with said transmission lines or related facilities, the question thereby raised shall be submitted to the Commission for determination."

3. Art. IV, § 3, cl. 2.

consideration of the bill which eventually became the Federal Power Act, the subject was broached at least three times, and upon each occasion the witness testifying on behalf of the bill as the representative of the Power Commission assured the Congress that the proposed bill did not make it possible for the Government to utilize the transmission lines of private companies or to require the transmission of power generated by a Government plant over the lines of private operating companies. Three excerpts from this testimony are reproduced in footnote 4 below.[4] Finally Congress inserted in the statute, as Section 201(f),[5] a provision that no provision in that Part of the statute shall be deemed to include the United States or any of its agencies. That Part is the Part which deals with, among other things, the interconnection and coordination of facilities. The specific exclusion of the facilities of the United States from the possibility of interconnection and coordination under the terms of that Part of the statute seems clearly to be a declaration of congressional intent upon the subject. So much seems plain enough.

At this point the argument turns to specific terms in the statute. The Federal Power Act is in Parts. Part I deals with licenses and Part II deals with the interconnection of facilities. The exclusion of the United States, which we have just discussed, is in Part II, and its language is: "No provision in this Part shall apply to, or be deemed to include, the United States * * *." [6] The Commission says that under this language the exclusion applies only to provisions of Part II and has no application to licenses, which are treated in Part I.

4. *Hearings before House of Representatives Committee on Interstate and Foreign Commerce on H. R. 5423,* 74th Cong., 1st Sess. (1935):

"Mr. Wolverton. Under the provisions of this bill, would it be possible for the Government in any of its electric operations to utilize the transmission lines of private companies?

"Mr. DeVane. No, sir; and I want to make that very definite; and if there is any doubt about it, so far as I am concerned, such amendment might be made as to make it clear. * * *

" * * * If * * * it is the desire of Congress not to * * * give the municipal or governmental projects the right to use the transmission lines of private industry—and we have not succeeded in making that clear in this bill —an amendment should be proposed that will do it better. It will receive our hearty endorsement.

"Mr. Wolverton. Let me suggest a possible situation. Your answer will clarify my mind considerably as to the effect of this bill in the particular instance. Assume that a municipality built a plant for the generation and distribution of electric energy; assume that a distant community is serviced by a company that comes under the regulation of this bill in that it procures its electric energy from outside of the State. Could the city which has constructed a plant, but has no transmission lines, utilize the system of transmission lines constructed by the private company?

"Mr. DeVane. No, sir.

"Mr. Wolverton. Then, you do not think that the power given in this bill to the Federal Power Commission would enable it to direct that those transmission lines be so used?

"Mr. DeVane. Mr. Wolverton, my answer to that is this: That if there is any doubt about it and this committee can remove that doubt by additional words in this bill, let us put them in." (Pp. 514–515.)

"Mr. Mapes. Is it the purpose to compel the privately owned transmission companies to carry the energy of municipal projects as well as private projects?

"Mr. DeVane. No, sir; I thought I had made that very clear. If I did not, I want to make it very clear now. It is not intended to give the Commission power to require the private lines to take on any power generated by municipal plants or by any Government plant." (P. 546.)

"Mr. DeVane. * * * The only thing that we have discussed is the desirability of making it perfectly clear in this law that it is not the intention of this law to reach out and get control of that power nor is it the intention of this law to authorize this Commission to require the transmission of that power on the lines of these private operating companies." (P. 559.)

5. 49 Stat. 848 (1935), 16 U.S.C.A. § 824(f).

6. Sec. 201 (f), 49 Stat. 848 (1935), 16 U. S.C.A. § 824(f).

We examine Part I. It prescribes the conditions upon which licenses should be issued. It does not mention interconnection with Government facilities or transmission of Government energy as permissible conditions. But the Commission points to the catchall clause at the end of the specified conditions. That general clause, read in conjunction with the introductory clause of the Section, is: "All licenses issued under this Part shall be on the following conditions: * * *.

"(g) Such other conditions not inconsistent with the provisions of this Act as the commission may require." [7]

The language prohibits conditions inconsistent with other provisions "of this Act"—not of Part I alone but of the Act. The exclusion of the United States from interconnecting arrangements, while in Part II, is nevertheless in the Act. And so this general clause in Part I, upon which the Commission relies, forbids conditions upon licenses inconsistent with other provisions throughout the Act. Specifically, it forbids, among other things, a condition inconsistent with the exclusion of the United States from interconnection arrangements.

The Commission next says that its general power to prescribe conditions must be interpreted in the light of the opening clauses of the Section (Section 10, which is in Part I) which relates to those conditions. The first subparagraph in that Section reads, in pertinent part: "All licenses issued under this Part shall be on the following conditions:

"(a) That the project adopted * * * shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, * * *." The Commission says that the interconnection of the Company's transmission lines with Government generating and transmission facilities is best adapted to a comprehensive plan for developing a waterway for beneficial public uses and for the improvement and utilization of water-power development in the area. The Section last quoted (Section 10) obviously applies primarily to the type, location, size and purpose of the project. We think that its terms cannot be construed to require the interconnection of private facilities with public facilities and the compulsory transmission of public power by a private company, in view of the fact that Congress specifically forbade such interconnections in the Part of the statute which deals with that subject.

The problem which is presented to us in this case is essentially a legislative problem. Congress has ample power, as we have said, to prescribe the conditions upon which the water-power potentialities of public lands shall be developed. Its only declaration upon the interconnection of Government and private facilities is the one to which we have referred and which precludes that interconnection. If the Commission believes it to be in the public interest to prescribe such a condition upon power project licenses, it should present its views to the Congress.

The order of the Commission will be modified by the elimination therefrom of paragraph (F), and the case will be remanded to the Commission for the entry of an order in accordance with this opinion.

Remanded for modification of order.

7. Sec. 10(g), 41 Stat. 1070 (1920), as amended, 49 Stat. 844 (1935), 16 U.S.C.A. § 803(g).